UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN and NICOLE HOLDEN,

    Plaintiffs,

v

SHELLY JENSEN et al.,

    Defendants.

_____/

Case No. 1:10-cv-697

HON. JANET T. NEFF

## **OPINION**

This is a civil rights action Plaintiffs, on their own behalf and as Next Friends of their minor son, Ethan, initiated against Shelley Jensen, Ethan's preschool teacher; Penelope Miller-Smith, the Director of Special Education Services; Superintendent Terry Babbitt; and the Mona Shores School District. Plaintiffs allege nine federal and state law claims. Now pending before the Court is Defendants' "Motion to Dismiss Plaintiffs' Complaint and for Summary Judgment Pursuant to FED. R. CIV. P. 12(b)(1) and (6) and 56 Because Plaintiffs Did Not Exhaust Administrative Remedies Under IDEA and MMSEA" (Dkt 47). Plaintiffs filed a response in opposition (Dkt 49), and Defendants filed a reply (Dkt 43). Having fully considered the parties' motion briefs and statements of uncontested facts, the Court determines that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court decides that Defendants' motion is properly granted.

## I. BACKGROUND

### A. The IDEA

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, is a Spending Clause statute that seeks to ensure that "all children with disabilities have available to them a free appropriate public education" (FAPE), § 1400(d)(1)(A). The Act "leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, but imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 52 (2005) (quoting *Board of Ed. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 183 (1982)).

Participating states, such as Michigan, must certify to the Secretary of Education that they have policies and procedures that will effectively meet the Act's conditions, 20 U.S.C. § 1412(a). *Schaffer, supra.* See MICH. COMP. LAWS § 380.1701 *et seq.* (Michigan's Mandatory Special Education Act [MMSEA]). State educational agencies, in turn, must ensure that local schools and teachers are meeting the state's educational standards, 20 U.S.C. §§ 1412(a)(11), 1412(a)(15)(A). *Schaffer, supra.* Local educational agencies (school boards or other administrative bodies) can receive IDEA funds only if they certify to a state educational agency that they are acting in accordance with the state's policies and procedures, § 1413(a)(1). *Id.* at 52-53.

As the Supreme Court observed, "[t]he core of the statute ... is the cooperative process that it establishes between parents and schools," and the "central vehicle for this collaboration is the [Individualized Education Program (IEP)] process." *Schaffer,* 546 U.S. at 53. "State educational authorities must identify and evaluate disabled children, 20 U.S.C. §§ 1414(a)-(c), develop an IEP

for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)." *Id.* The Act requires that an IEP include, among other items,

>   (I)     a statement of the child's present levels of educational performance, . . .;
>
>   . . . .
>
>   (II)    a statement of measurable annual goals, including academic and functional goals, . . . ;
>
>   . . . .
>
>   (III)   a description of how the child's progress toward meeting the annual goals described in subclause (II) will be measured and when periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards) will be provided;
>
>   (IV)    a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child . . . ;
>
>   (V)     an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in subclause (IV) . . . .

20 U.S.C. § 1414(d)(1)(A).

Parents and guardians play a significant role in the IEP process. *Schaffer*, 546 U.S. at 53. They must be informed about and consent to evaluations of their child under the Act, § 1414(c)(3). *Id.* Parents are included as members of "IEP teams," § 1414(d)(1)(B). *Id.* They have the right to examine any records relating to their child, and to obtain an "independent educational evaluation of the child," § 1415(b)(1). *Id.* They must be given written prior notice of any changes in an IEP, § 1415(b)(3), and be notified in writing of the procedural safeguards available to them under the Act, § 1415(d)(1). *Id.* If parents believe that an IEP is not appropriate, then they may seek an

administrative "impartial due process hearing," § 1415(f). *Id.* School districts may also seek such hearings. *Id.* After the due process hearing, any aggrieved party may bring a civil action in state or federal court, § 1415(i)(2). *Id.* In sum, the IDEA contemplates that the "special knowledge and experience of the agencies will be utilized in devising the plan, that it will be fine-tuned through the cooperation of the child's teachers and parents, and that the advice of a qualified and impartial hearing officer will be available concerning the adequacy of the plan." *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989).

Moreover, the IDEA does not preclude a disabled child from pursuing other available remedies under federal law in state or federal court, provided that the child first exhaust all administrative remedies available under state law where the relief sought is available under the IDEA. *See* 20 U.S.C. § 1415(*l*) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.").

### B. Relevant Facts

The child at the heart of this litigation is Ethan Holden. Ethan suffers from Autism Spectrum Disorder (Compl. [Dkt 1] ¶ 8), a disability that qualifies him for special education and related services under the IDEA. In the fall of 2008, Ethan began attending preschool in a special education classroom at Ross Park Elementary School, a public school within the Mona Shores School District

4

(Mona Shores) (SMF[1] ¶ 1). Plaintiffs and Mona Shores agreed to an IEP for Ethan, which Plaintiff Alan Holden signed on October 27, 2008 (*id.*).

Later, in December 2008, Plaintiff Nicole Holden attended a Christmas party in Ethan's classroom (Comp. ¶¶ 32-33). According to Holden, Ethan sat in a booster seat attached to a small chair during the party (*id.* ¶ 34). The booster seat had a small plastic "seat belt." Holden did not believe use of the booster seat was appropriate. Plaintiffs contend, but Defendants deny, that use of the booster seat was traumatic to Ethan and caused him anxiety (SMF ¶ 17). Plaintiffs withheld Ethan from the classroom and asked for a meeting (Compl. ¶ 41). Defendants assert that the October 27, 2008 IEP in effect at the time "did not prohibit use of a booster seat or a booster seat with a strap nor did [the IEP] say Plaintiffs requested such restriction" (SMF ¶ 17).

An IEP meeting was scheduled for January 16, 2009 (SMF ¶ 18). However, Plaintiffs cancelled the meeting, apparently at the last minute (*id.*). Defendants assert that because Plaintiffs did not appear for the scheduled meeting, the Mona Shores team members who convened for the meeting developed ideas for a new IEP, but no new IEP was formally promulgated (*id.*).

Mona Shores rescheduled the IEP meeting to January 23, 2009, and members of the IEP team from Mona Shores convened at that time (SMF ¶ 18). However, Plaintiffs again cancelled the meeting. Plaintiffs contend that those team members who were present promulgated an IEP on January 23, 2009, without their input, and that the IEP "included an evaluation of [Ethan's] academic achievement and functional performance which was substantially different from the one Defendants prepared just three months earlier" and "proposed severely restricting [Ethan's]

---

[1] Statement of Material Facts (Dkt 24), Plaintiffs' Response and Statement of Material Facts (Dkt 29-1), and Defendants' Reply to Plaintiffs' Statement of Material Facts (Dkt 44).

placement so that he would no longer be educated in the least restrictive environment" (*id.*). Defendants deny that an IEP was promulgated. Defendants point to a January 23, 2009 letter from Special Education Director Miller-Smith to Plaintiffs, stating, "Because the district values your participation, the IEP team elected to suspend the meeting in hopes that we will be able to schedule a convenient time for you in the near future to conclude the IEP" (Dkt 23 at 9, Ex. C).

Plaintiffs retained the services of attorney Veena Rao of the Michigan Protection and Advocacy Service, Inc. (SMF ¶ 4). On or about February 6, 2009, attorney Rao commenced the administrative process set forth in the IDEA by requesting an IDEA due process hearing, 20 U.S.C. § 1415(b)(7) (*id.*). According to Plaintiffs, their due process complaint concerned "the school district's failure to require a functional behavior assessment and a positive behavior intervention plan to address the 'behavioral needs' that are identified in the [Present Level of Academic Achievement and Functional Performance] PLAAFP statement" (*id.* ¶ 3). The State of Michigan Office of Administrative Hearings and Rules (SOAHR) scheduled a pre-conference hearing for March 10, 2009 (*id.* ¶ 5). Plaintiffs received notice of the pre-hearing conference and additional information from SOAHR concerning the nature of the hearing and their rights under the IDEA (*id.*).

On February 24, 2009, the parties reconvened the IEP team to review Ethan's IEP (SMF ¶ 21). Plaintiffs requested that Defendants no longer use the booster seat with Ethan, and Defendants agreed to this request (*id.*). Plaintiffs state that Defendants also agreed that Ethan would not be moved to a more restrictive environment and that both agreements of the parties were placed in an IEP (*id.*). However, Defendants deny that a new IEP was formally adopted at the February 24, 2009 meeting (*id.*).

At the March 10, 2009 pre-conference hearing, with attorney Rao appearing on their behalf, Plaintiffs voluntarily withdrew and agreed to dismiss their due process hearing request (SMF ¶¶ 6-7). SOAHR Administrative Law Judge Michael L. Heredeen consequently dismissed their due process complaint and removed their complaint from the SOAHR hearing docket (*id.* ¶ 7). No due process hearing was ever held.

Plaintiffs subsequently met with the other Mona Shores IEP team members to try to develop a new IEP for Ethan (SMF ¶ 8). However, on or about April 27, 2009, Plaintiff Nicole Holden, while assisted by a different representative of the Michigan Protection and Advocacy Service, Inc., Laurie A. Flemington, indicated that Plaintiffs wished to "table" the development of a new IEP for Ethan (*id.* ¶ 9). Ethan remained a student in the Mona Shores School District for the remainder of the 2008-09 school year (*id.* ¶ 10). On June 8, 2009, the IEP team agreed to and adopted a new IEP for Ethan, which Plaintiff Alan Holden signed on June 9, 2009 (SMF ¶ 11).

However, before the 2009-10 school year began, Plaintiffs withdrew Ethan from Mona Shores and enrolled him in a neighboring school district, Fruitport Community Schools (SMF ¶ 12). Plaintiffs indicate that the transfer was precipitated by their move from their apartment to a house in the Fruitport school district (*id.* ¶¶ 12, 23). Ethan is receiving an education through an IEP developed with the Fruitport Community Schools (*id.* ¶ 13). Plaintiffs admit they have not pursued their administrative remedies with Mona Shores and have not asked Mona Shores to further develop an IEP for Ethan (*id.* ¶ 15).

On July 21, 2010, Plaintiffs initiated this nine-count suit against teacher Jensen, Director of Special Education Services Miller-Smith, Superintendent Babbitt, and the Mona Shores School District. Plaintiffs allege the following nine claims:

7

    I.      Violation of the Fourth Amendment, under 42 U.S.C. § 1983;

    II.     Violation of the Fourteenth Amendment, under 42 U.S.C. § 1983;

    III.    Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132;

    IV.    Violation of the Rehabilitation Act, 29 U.S.C. § 794;

    V.     Violation of the Persons with Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1103;

    VI.    Battery;

    VII.   Assault;

    VIII.  False Imprisonment; and

    IX.    Intentional Infliction of Emotional Distress.

On August 18, 2010, Defendants requested a Pre-Motion Conference, proposing to file a dispositive motion based on their proposition that all nine counts of Plaintiffs' Complaint come within the IDEA's purview and that Plaintiffs have not yet exhausted their administrative remedies (Dkt 7). Following a Pre-Motion Conference on October 10, 2010, this Court issued a briefing schedule, permitting the parties to brief the exhaustion question Defendants presented. The parties filed their respective motion papers in December 2010 (Dkts 22-49).

## II. ANALYSIS

### A. Nature of Motion and Standard of Review

Defendants' motion is a combined motion under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56. Defendants argue that in failing to allege that Plaintiffs exhausted their IDEA remedies, Plaintiffs' Complaint does not give this Court "subject-matter jurisdiction" over Plaintiffs' claims, FED. R. CIV. P. 12(b)(1), and does not "state a claim upon which relief can be granted," FED.

R. CIV. P. 12(b)(6) (Dkt 23 at 12). Alternatively, Defendants argue that if these omissions are insufficient bases for dismissal, then this Court should grant Defendants summary judgment under FED. R. CIV. P. 56(c) and dismiss Plaintiffs' Complaint because there is no genuine issue as to any material fact regarding Plaintiffs' failure to exhaust IDEA-related administrative procedures and remedies (*id.* at 13).

Plaintiffs assert that the exhaustion issue Defendants present for this Court's review should be resolved under Rule 56, and that this Court should conclude that there is a disputed issue of material fact as to whether exhaustion would be futile (Dkt 49 at 17). Plaintiffs opine that they had no duty to specifically plead exhaustion and that resolving Defendants' arguments under Rule 12(b)(1) would therefore be inappropriate (*id.*).

The circuits are split on whether exhaustion of administrative remedies under the IDEA is a jurisdictional requirement or whether exhaustion is merely a condition precedent for filing an IDEA lawsuit. *See Sagan v. Sumner County Bd. of Educ.,* 726 F. Supp. 2d 868, 872 (M.D. Tenn. 2010) (cataloging cases). Some circuits have held that the failure to exhaust administrative remedies does not deprive a court of subject-matter jurisdiction, reasoning that the lack of exhaustion is usually waivable whereas a lack of subject-matter jurisdiction is not. *Id.* Other circuits have concluded that exhaustion of administrative remedies is a jurisdictional prerequisite, with the failure to exhaust administrative remedies therefore resulting in dismissal for lack of subject-matter jurisdiction. *Id.* The Sixth Circuit Court of Appeals has not yet decided the issue.

In *B.H. v. Portage*, No. 1:08-cv-293, 2009 WL 277051, at *4 (W.D. Mich. Feb. 2, 2009), Magistrate Judge Joseph G. Scoville considered the question of the proper motion standard in light of the analysis applied in *Jones v. Bock*, 549 U.S. 199 (2007) (analyzing the exhaustion provision

9

of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A, and finding that, although many lower courts, including the Sixth Circuit, had treated this provision as jurisdictional, exhaustion is better regarded as an affirmative defense). Judge Scoville concluded that failure to exhaust administrative remedies in the IDEA context is similarly an affirmative defense, not a jurisdictional bar. Consequently, Judge Scoville determined that a motion brought pursuant to Rule 12(b)(1) was not an appropriate vehicle by which to raise the issue, although the court perceived "no substantial difference" between the defendants' Rule 12(b)(1) motion (a facial attack based on the allegations in the complaint alone) and a motion for summary judgment (a factual attack relying on matters outside the pleadings). *Id. See also Payne v. Peninsula Sch. Dist.*, ___ F.3d ___, 2011 WL 3211503, at *2 (9th Cir. July 29, 2011) (overruling its earlier treatment of IDEA § 1415(*l*) "in light of a spate of Supreme Court cases clarifying the difference between provisions limiting our subject matter jurisdiction ... and claims processing provisions").

The Court is persuaded by the reasoning of Judge Scoville and the circuits concluding that the failure to exhaust administrative remedies does not deprive a court of subject-matter jurisdiction. As the Ninth Circuit observed, and as the discussion of Defendants' motion makes evident, *infra,* "the exhaustion requirement in § 1415(*l*) is not a check-the-box kind of exercise" but an "inexact science," presenting questions that are better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all. *See Payne,* 2011 WL 3211503, at *5. In light of the record matters referenced by the parties as well as Plaintiffs' agreement to proceed under Rule 56, the Court determines it may properly analyze Defendants' motion under the standard for deciding Rule 56 motions.

Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *See S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 637 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## B. Discussion

"Plaintiffs bringing claims under the IDEA are generally required to exhaust their administrative remedies before bringing a civil action." *Donoho ex rel. Kemp v. Smith County Bd. of Educ.*, 21 F. App'x 293, 296 (6th Cir. 2001) (citing *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000), and *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989) (examining § 1415(e)(2), the predecessor to § 1415(i)(2)). Exhaustion "'enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.'" *Donoho, supra* (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)).

The Sixth Circuit has highlighted the importance of the factfinding aspect of the exhaustion requirement, in particular, observing that "[f]ederal courts—generalists with no expertise in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA]: 'that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.' *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S. Ct. 3457,

11

3468, 82 L. Ed. 2d 746 (1984). Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act." *Crocker*, 873 F.2d at 935. "To allow parents to come directly to federal courts will render the entire scheme [of the IDEA] nugatory." *Id.*

Thus, as noted *supra*, the IDEA provides that a disabled child may pursue other available remedies under federal law only *after* exhausting the IDEA procedures. 20 U.S.C. § 1415(*l*). Additionally, some courts have held that whenever a claim falls within the purview of the IDEA, exhaustion is required. *See Covington*, 205 F.3d at 915 (collecting cases). *See, e.g., Franklin v. Frid*, 7 F. Supp. 2d 920, 925-26 (W.D. Mich. 1998) (concluding that despite allegations of a school official's intentionally humiliating, poking, hitting, slapping, and verbally abusing a student, the "gravamen of the claim" fell within the purview of the IDEA, requiring exhaustion).

Defendants argue that Plaintiffs' federal law claims (Counts I-V) must be dismissed because the remedies for their allegations are available under the IDEA (Dkt 23 at 28). Defendants argue that Plaintiffs' state-law claims (Counts VI-IX) must also be dismissed because these claims relate to implementation of Ethan's IEP (*id.* at 28-29). Plaintiffs do not contest the applicability of the IDEA exhaustion requirement to their claims, nor do Plaintiffs contest that their claims are unexhausted (Dkt 49 at 6). Rather, Plaintiffs argue that pursuit of the administrative process would be futile, thereby excusing their failure to exhaust (*id.*).

Both the United States Supreme Court and the Sixth Circuit Court of Appeals have held that exhaustion is not required under the IDEA if it would be "futile or inadequate" to protect the plaintiff's rights. *Honig v. Doe*, 484 U.S. 305, 326-27 (1988); *Covington*, 205 F.3d at 917. The

12

burden of demonstrating futility or inadequacy rests on the party seeking to bypass the administrative procedures. *Honig*, 484 U.S. at 327; *Crocker*, 873 F.2d at 937. Pointing to four characteristics of their case, Plaintiffs argue that exhaustion is futile "because of the unique facts of this case" (Dkt 29 at 19). However, the Court is not convinced that Plaintiffs have borne their burden of demonstrating the futility of the administrative process they seek to bypass.

1. *Tort Allegations*

First, Plaintiffs point out that they are not complaining about the denial of a FAPE, but about "tortious physical acts which the IDEA remedies are not designed to redress" (Dkt 49 at 19). Plaintiffs reference an observation by the First Circuit Court of Appeals in *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003), that the "IDEA's primary purpose is to ensure a FAPE, not to serve as a tort-like mechanism for compensating personal injury" (*id.*).

The First Circuit in *Nieves-Marquez* was not deciding whether the type of claims the plaintiffs alleged permitted the plaintiffs to bypass the administrative process. Indeed, the plaintiffs in *Nieves-Marquez* had exhausted their administrative remedies. The First Circuit was examining the IDEA to determine whether money damages were available, in an effort to decide the ultimate question before it, which was whether the defendants were immune under the Eleventh Amendment from claims for monetary relief. Plaintiffs therefore improperly rely on *Nieves-Marquez* as a case supporting the proposition that pleading tort claims creates an avenue around the administrative process.

Similarly, in another case upon which Plaintiffs rely, *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 567-68 (7th Cir. 2004), the Seventh Circuit permitted certain unexhausted tort claims against the defendant school district to proceed, not because torts were alleged, but because

13

the plaintiff demonstrated that exhaustion of administrative remedies would be futile where the IDEA does not provide medical services to disabled individuals (beyond diagnostic and evaluative services) and the plaintiff's claim centered on the permanent physical damage to his kidneys. *See also Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268 (10th Cir. 2000) (dismissing the plaintiff's IDEA-based § 1983 claims against the school district but permitting the ADA claim to proceed under the "narrow circumstances" where the plaintiff sought damages "solely to redress the fractured skull and other physical injuries she suffered").

What revealed futility (or failed to do so) in these cases then was not whether the plaintiff had pleaded a tort claim, but whether the plaintiff had alleged injuries that could not be redressed "to any degree" by the IDEA's administrative procedures and remedies. *S.E.*, 544 F.3d at 642 (quoting *Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1048 (9th Cir. 2002) (holding that a student suing for lost educational opportunities and emotional damages based on her removal from the classroom in favor of allegedly deficient, unsupervised student tutoring must exhaust administrative remedies); *Padilla*, 233 F.3d at 1274-75.

The IDEA covers "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Where a plaintiff alleges injuries "that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies." *Robb*, 308 F.3d at 1054. Indeed, "even where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." *Padilla*, 233 F.3d

14

at 1274. The dispositive question in the futility analysis is not then simply whether a plaintiff has pleaded a tort claim; therefore, Plaintiffs' first argument does not satisfy their burden.

2. *Request for Money Damages*

Second, in support of their futility argument, Plaintiffs point to the fact that they are seeking only money damages, and they claim that the "only remedy" to compensate Ethan for the past instances of restraint is money damages (Dkt 49 at 19, 23-25). The Sixth Circuit has held that damages are "unavailable through the [IDEA] administrative process." *Covington*, 205 F.3d at 918.

The Sixth Circuit has also made clear that a money damages claim alone does not excuse plaintiffs from exhausting their administrative remedies. *Covington*, 205 F.3d at 916 (citing *Charlie F. v. Board of Educ.*, 98 F.3d 989, 991-93 (7th Cir. 1996); *Doe v. Alfred*, 906 F. Supp. 1092, 1098 (S.D. W.Va. 1995) (noting that "a clear majority of courts hold exhaustion necessary despite the assertion of a contemporaneous § 1983 claim for damages"); *Waterman by Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361, 364-66 (W.D. Mich. 1990).

The Sixth Circuit reasoned that the rationales for requiring exhaustion, even when the plaintiff seeks money damages, are (1) that plaintiffs could otherwise circumvent the IDEA's elaborate scheme simply by appending a claim for damages; and (2) that the administrative process might ultimately afford sufficient relief to the injured party, even if it is not the specific relief that the plaintiff requested. *Covington*, 205 F.3d at 916-17 (citing *Waterman*, 739 F.Supp. at 365, and *Charlie F.*, 98 F.3d at 991-93); *see also* FED. R. CIV. P. 54(c) (providing that every final judgment, other than a default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

15

Plaintiffs emphasize that the *Covington* panel ultimately held, on the facts before it, that "exhaustion would be futile because money damages, which are unavailable through the administrative process, are the only remedy capable of redressing [the minor's] injuries." *Covington*, 205 F.3d at 917-18. However, the facts in this case are not similar to the "unique circumstances" in *Covington* and therefore do not merit the same conclusion.

In *Covington*, the panel highlighted that the injured child had already graduated from school and his injuries were "wholly in the past." Here, Ethan is far from his graduation date, and Plaintiffs' Complaint alleges injuries for which relief may be presently available. Plaintiffs' Complaint delineates the psychological stress and injury purportedly caused by the use of restraints in classrooms (Compl. ¶¶ 55-86). Plaintiffs allege that Ethan suffered injury as a result of his exclusion from and denial of the benefits of Defendants' regular educational services and programs that were offered to other Ross Park Elementary School students (*id.* ¶¶ 123, 126, 133, 142). The remediation of Ethan's injuries and academic deficiencies, if any, is initially best addressed by educational professionals through the administrative process. The rationales the *Covington* panel identified for requiring exhaustion–avoiding circumvention by parties and not affording more than "sufficient" relief to an injured party–are fully applicable on these facts.

In short, Plaintiffs' reliance on their claim for money damages does not demonstrate the futility of the administrative process. "The theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply." *Charlie F.*, 98 F.3d at 992; *cf. Booth v. Churner*, 532 U.S. 731 (2001) (holding that, under the PLRA, prisoners are not excused from pursuing administrative remedies simply because they have requested money damages unavailable under a prison's administrative procedures).

16

3.    *Purported Administrative Resolution*

Third, Plaintiffs argue that futility is demonstrated because "all educational issues were resolved through the IEP process," where the school agreed to discontinue the restraint before Ethan left the district (Dkt 49 at 19).

Plaintiffs commenced the administrative process but dismissed their case before a due process hearing could be held. Their argument that exhausting their administrative remedies would be futile because "all was resolved" contradicts the allegations in their Complaint. Plaintiffs allege that "[t]he evaluation contained in the January 23, 2009, IEP is inaccurate and unrealistic, and the proposed IEP was developed in order to retaliate against the Holdens for complaining about the restraint used on Ethan" (Compl. ¶ 51). Plaintiffs allege that "[t]he new IEP proposed severely restricting Ethan's educational environment to an extent that he would not be placed in the least restrictive environment in which he could be educated" (*id.* ¶ 52). Last, Plaintiffs allege that Ethan suffered injury as a result of his exclusion from and denial of the benefits of Defendants' regular educational services and programs that were offered to other Ross Park Elementary School students (*id.* ¶¶ 123, 126, 133, 142). Again, the remediation of Ethan's injuries and academic deficiencies, if any, is initially best addressed by educational professionals through the administrative process. The exhaustion requirement is "more than a matter of form," and "[i]nsisting on exhaustion forces parties to take administrative proceedings seriously." *S.E.*, 544 F.3d at 643 n.10 (quoting *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 104 (1st Cir. 1997)). Plaintiffs' argument, while artful, does not support bypassing the administrative process.

17

4.     *Transfer to New School District*

Last, in support of their futility argument, Plaintiffs rely on the fact that they moved Ethan to a new school district, arguing that Mona Shores therefore can no longer provide Ethan with a remedy (Dkt 49 at 19, 21-22).  Plaintiffs again rely heavily on *Covington*, where the Sixth Circuit determined exhaustion would be futile, in part, because the injured child had already graduated from school.  205 F.3d at 917-18.

In *S.E.*, 544 F.3d at 642, the plaintiffs, who had withdrawn their child from the public school in favor of home-schooling her, also attempted to rely on parts of the Sixth Circuit's decision in *Covington* as supporting their futility argument.  However, the Sixth Circuit observed that its "reasoning in that case also lends support to the argument for exhaustion." *Id.* at 642.  *See also Doe By & Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) (observing that the parents' unilateral act of removing their child from a public school does not mean that administrative procedures may be bypassed absent a showing that exhaustion of the administrative process would be futile).  The Sixth Circuit determined that the issues raised in the litigation were "best first addressed by the comprehensive administrative process Congress put in place for resolution of differences in the educational setting."  *S.E.*, 544 F.3d at 643.  Further, in considering whether the administrative process could still address the child's alleged injuries, the Sixth Circuit noted that the process may have in-kind services and resources available to it for assistance of students who have been aggrieved in some way by the system.  *Id.*

The IDEA requires a school district to provide not only education but also "related services," which means "transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological

18

services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 29 U.S.C. § 1401(26)(A).

Hence, exhaustion of the IDEA processes is justifiable whether the process demonstrates that adequate remedial services can be provided or whether exhaustion provides information relevant to claims under other statutes. *Charlie F.*, 98 F.3d at 992. The administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children–and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain. *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 61 (1st Cir. 2002) (rejecting the plaintiffs' futility argument, which was based on their daughter's graduation from high school). "Fidelity to the IDEA's exhaustion requirement ensures such an outcome." *Id.*

In sum, the Court decides that Plaintiffs have not borne their burden of demonstrating the futility of the administrative process. That Plaintiffs have pleaded tort claims, requested money damages, entered into prior agreements with Defendants, and unilaterally transferred their child to another school district does not demonstrate that Ethan's alleged injuries cannot be redressed "to any degree" by the IDEA's administrative procedures and remedies. Rather, this Court agrees with

Defendants that exhaustion should be required in order to give the educational agencies the initial opportunity to ascertain and alleviate the alleged problem or provide information relevant to claims under other statutes. Allowing Plaintiffs to completely bypass the IDEA's administrative process en route to this Court would disrupt the carefully calibrated balance of the Act and instead shift the burden of fact-finding from the educational specialists to this Court. *See Frazier*, 276 F.3d at 61. As Plaintiffs have conceded both that the exhaustion requirement applies to their claims and that the requirement is unmet, and further failed to demonstrate the futility of the administrative process, the Court dismisses Plaintiff's Complaint.

Plaintiffs request that if this Court determines to dismiss their Complaint, that the dismissal be without prejudice (Dkt 29 at 29-30). Defendants do not address this request in their reply, but Defendants' argument, that adjudication must be postponed pending administrative exhaustion, lends support to the conclusion. Moreover, given this Court's analysis of Defendants' motion, this Court is persuaded that dismissal without prejudice is proper. *See, e.g., S.E.*, 544 F.3d at 643 (holding that the district court correctly dismissed the plaintiff's Rehabilitation Act claim without prejudice).

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' "Motion to Dismiss Plaintiffs' Complaint and for Summary Judgment Pursuant to FED. R. CIV. P. 12(b)(1) and (6) and 56 Because Plaintiffs Did Not Exhaust Administrative Remedies Under IDEA and MMSEA" (Dkt 47), and dismisses Plaintiffs' Complaint without prejudice. An Order and Judgment consistent with this Opinion will enter.

Date: September 12, 2011       /s/ Janet T. Neff
                               JANET T. NEFF
                               United States District Judge